## Maglin v. Weinberg

Before Ellenbogen, Smart and Montgomery, JJ.

*Rosenberg & Rosenberg*, for plaintiff.

*Mercer & Buckley*, for defendant.

SMART, J., June 26, 1959.—This case is before us on defendant's motion for judgment on the pleadings. The complaint alleges that on or about August 12,

1956, plaintiffs rented an apartment in defendant's apartment building on the fourth floor thereof. On or about the same day the wife-plaintiff was injured while she was descending the fire escape at the rear of defendant's building when the handrail came loose and detached suddenly and without warning. The complaint further alleges that said fire escape was used by plaintiffs and other tenants in the apartment building and was a common appurtenance maintained, repaired and under the control of defendant and his employes. It is also alleged that the handrail was in a dangerous and loose condition prior to August 12, 1956.

To the allegations of the complaint, defendant filed an answer and new matter setting forth a written exculpatory clause contained in the lease. Defendant contends that this exculpatory clause releases him from any liability.

The release portion of the lease provides, inter alia:

"The Lessor shall not be liable for any injury or damage to any person . . . at any time on said premises or building from any cause whatsoever which may arise from the use or condition of said premises or building . . . or from any other cause, *during said term or any renewal thereof*." (Italics supplied.)

In interpreting exculpatory clauses, the waiver by a tenant of his landlord's responsibility must be plainly expressed, and to ascertain what the parties intended in a written agreement, recourse must be had to the terms of the writing itself: Bogutz v. Margolin, 392 Pa. 151, and cases cited therein.

An examination of the release clause before us discloses that its application is expressly limited to causes or defects arising during the term of the lease. In Baldwin v. McEldowney, 324 Pa. 399, our Supreme Court, in considering a release clause similar to the one before us, stated, at page 404:

". . . If the parties had intended to release from the consequences of dangerous condition existing before and known at the time to the landlord, more specific language would have been used to make their agreement clear. The release was 'from any cause whatever which may arise from the use or condition of said premises or building . . . or from any other cause, *during said term* or any renewal thereof.' This language does not apply to property over which he retained the measure of control necessarily involved."

It was, therefore, held that the release clause would not bar plaintiff's action.

The complaint filed herein alleges that the fire escape and handrail were in a loose and dangerous condition for a long time prior to August 12, 1956. Defendant's answer and new matter sets forth a copy of the lease and discloses that the parties thereto entered into the lease for a one-year term commencing May 1, 1955. This lease was subsequently renewed for an additional term of one year. It, therefore, is not clear whether the alleged defect existed prior to May 1, 1955, the allegation being merely that it existed "for a long time prior to August 12, 1956." The determination of this fact is a matter properly left for the jury's consideration.

In addition to the release clause being limited, as discussed above, we are of the opinion that it has no application to the circumstances of this case. In Boyd v. Smith, 372 Pa. 306, the court points out that an exculpatory clause is undoubtedly valid and enforceable if it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or the State but merely an agreement between persons relating entirely to their private affairs. The property in the case before us is located in the fourteenth ward of the City of Pittsburgh. An ordinance of the City of Pittsburgh is controlling herein. The Pittsburgh

Municipal Digest, 1938, sec. 1612, page 651, dealing with tenement houses provides, inter alia:

"Cleanliness and *safety* within dwellings— . . . all, floors, *stairs*, porches, *handrails and guardrails*, doors, windows, glass, shutters, *fire escapes*, balconies, walls, ceilings, chimneys, walks and pavements, sewers and drains, or any part or fixture belonging to or connected with any such tenement house, or other dwelling house, must be kept in good repair and safe condition at all times. Sec. 18, Ordinance of 1911, No. 48." (Italics added.)

This ordinance is obviously grounded upon public health and safety and is a police measure obviously intended for the protection of human life. In such a case, public policy does not permit an individual to waive the protection which the statute is designed to afford him. The clause in the lease before us is violative of that public policy as set forth in the ordinance and therefore is legally inoperative and void. Boyd v. Smith, supra; Felegy v. Pensper, 533 January term, 1954 (C. P., Allegheny County).

Defendant contends that even if he did violate the ordinance we may not consider this because plaintiffs have not specifically pleaded the violation in their complaint. This contention is not well taken, since statutes and ordinances need not be specifically pleaded. It is sufficient that the facts averred are such as to bring the case within the scope of the statute or ordinance: 6 Anderson, Pennsylvania Civil Practice, §408, p. 186. In fact, we must take judicial notice of the ordinances of cities, boroughs, etc., within the Commonwealth: Act of April 8, 1941, P. L. 16, 28 PS §301.

For the reasons stated above, defendant's motion for judgment on the pleadings will be refused.